**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

IN RE:

| | |
|---|---|
| TIMOTHY C. and MARGARET A. GLEASON | CASE NO. 11-22367 |
| DEBTORS | |
| TIMOTHY C. and MARGARET A. GLEASON | PLAINTIFFS |
| VS. | ADVERSARY CASE NO. 13-2035 |
| GVL LAKE PROPERTIES, LLC<br>ANDREW VONLEHMAN<br>BARBARA VONLEHMAN | DEFENDANTS |

**MEMORANDUM OPINION**

This case is about a lake house, and the limited liability company that Debtors formed with two family friends to purchase and manage it. Prior to their bankruptcy, Debtors Mr. and Mrs. Gleason and the VonLehmans formed an LLC to purchase, manage, and share a lake house in Sardinia, Ohio. Debtors contributed a little over half of the lake house's purchase price, but they financed their contribution with the assumption of a mortgage that the VonLehmans obtained in their own names. Debtors continued to make all payments on the loan to the present day. However, some time after Debtors filed for bankruptcy, the VonLehmans decided the lake house's upkeep costs were too high and proposed to sell. Debtors refused to acquiesce in a sale to anyone outside their extended family but couldn't find a willing family buyer. Unable to settle their differences with the Debtors, the VonLehmans took to state court, seeking a judgment that under an Ohio LLC membership statute, Debtors lost their voting rights in the LLC when they filed for bankruptcy. Over Debtors' arguments that Section 541 of the Bankruptcy Code

preempted the Ohio statute, the state court granted the VonLehmans their requested relief.

Upon the state court's entry of judgment, Debtors took two actions in this Court. First, they filed a motion for contempt [Bk. Doc. 48][1] (the "Contempt Motion") against the VonLehmans, contending, alternatively, that the filing of the state court action directly violated Debtors' discharge by seeking to divest Debtors of property which was abandoned to them at the close of their case, and that the VonLehmans' state court action indirectly violated Debtors' discharge because it was brought for the purpose of coercing the Debtors to pay their discharged debt on the loan they assumed. Second, they filed an adversary proceeding against the VonLehmans, seeking a declaratory judgment that Section 541 preempts Ohio's LLC membership statute, contrary to the decision of the state court.

Debtors' related actions fail for related reasons. The discharge order discharges debts. It does not shield debtors from *in rem* actions brought to determine the status of property, even if that property were abandoned to debtors in their bankruptcy case. The VonLehmans' state court action, therefore, did not directly violate the discharge. Nor did it indirectly violate the discharge. On the facts stipulated to by the parties, the VonLehmans brought the state court action for one purpose: to effectuate a sale in which the Debtors would not acquiesce. Hence, Debtors' motion for contempt fails.

Debtors' adversary proceeding also fails. Debtors, in essence, request the Court to review and reverse the state court's decision that Section 541 does not preempt Ohio's LLC membership law. Debtors do not deny that normally such a request would be barred by the *Rooker-Feldman* doctrine, which forbids lower federal courts from reviewing state court judgments. But, they contend, their adversary proceeding falls within an exception to *Rooker-*

---

[1] References to the docket in Debtors' main bankruptcy case appear as [Bk. Doc. __]. References to the docket in Debtors' adversary proceeding appear as [AP Doc. __].

2

*Feldman* that allows this Court to correct state court judgments that modify the discharge. That argument fails because, as explained below, Debtors' discharge was not modified by the state court. The state court action concerned Debtors' property rights–a matter on which the discharge is silent. Because no exception to *Rooker-Feldman* applies, this Court lacks subject-matter jurisdiction over Debtors' adversary proceeding and will dismiss it.

I. Facts and Procedural History.

In 2006, the Debtors and the VonLehmans formed a limited liability company, GVL Lake Properties, LLC ("GVL"). GVL purchased a lake house with an adjoining lot on Lake Waynoka, in Sardinia, Ohio, from Debtor Margaret Gleason and her siblings. Under GVL's operating agreement, the initial equity in GVL was divided equally between the VonLehmans and the Debtors. The VonLehmans obtained a loan from Fifth Third Bank to purchase the lake house, which GVL assumed. In turn, the Debtors' capital contribution in GVL was financed by their assumption of the Fifth Third loan. Debtors were not personally liable to Fifth Third on the loan, but in GVL's operating agreement, they agreed to make all payments on, and pay all fees and expenses associated with, the loan (the "Assumed Loan"). Additionally, the operating agreement provided for the payment of the lake house's maintenance costs, splitting them equally between the Debtors and the VonLehmans, and gave both couples equal voting rights in the LLC.

On October 17, 2011, Debtors filed a Chapter 7 petition for bankruptcy. In their schedules, they listed the Assumed Loan as an unsecured debt. The VonLehmans did not file a proof of claim in Debtors' bankruptcy case, and on April 25, 2012, the Debtors received a discharge. Debtors, however, continued to pay the discharged Assumed Loan, and as of March 7, 2014, had not missed a payment on the loan.

3

In January 2012, the VonLehmans told the Debtors that they could no longer justify the expense of maintaining the lake house, and wanted to unwind GVL. For several months, the Debtors and the VonLehmans discussed selling the lake house to the Debtors' daughter and son-in-law, at a price of $415,000. The VonLehmans, in spite of having received appraisals valuing the lake house at $500,000, were willing to sell it for $415,000; however, the Debtors' daughter withdrew her offer. In June 2012, Debtors suggested that they would instead attempt to sell to one of Mrs. Gleason's siblings, but none made an offer. In July 2012, Debtors proposed to only sell the lake house's adjacent unimproved lot. The VonLehmans rejected that proposal, thinking that the lake house and lot would be more valuable sold together than sold separately.

On July 30, 2012, after seven months of failed attempts to find a buyer in Debtors' family, Mr. VonLehman wrote to the Debtors and announced his plan to list the lake house and adjacent lot for a price "in the mid $500,000's." [Bk. Doc. 67, Ex. 6.] Mr. VonLehman explained that, under Ohio law, the Debtors ceased to be members of GVL when they filed for bankruptcy. Thus, he reasoned, he was free to sell the lake house without the Debtors' consent. Mr. VonLehaman wrote that he was still open to offers from the Debtors' relatives, stating that it was his "absolute hope . . . that you and/or your family can purchase the Lake House." *Id.* But, he "encourage[d Debtors] to act sooner than later," before the lake house was sold to someone else. Finally, though stating that, in his opinion, the Debtors lost their membership rights in GVL, he wrote that "both of our families may continue to use the Lake House as we have done in the past, as long as both families pay for the usage." *Id.*

On August 21, 2012, Mr. VonLehman again wrote to the Debtors, confirming his refusal to sell the lot alone. He again encouraged the Debtors to come forward with a family buyer if they had one. However, he wrote that since it didn't appear that the Debtors had a willing family

4

buyer, they should "face reality" and agree to a sale. [Bk. Doc. 67, Ex. 7.] He added that while, in his lawyer's opinion, the Debtors no longer had voting rights in GVL, they retained economic rights and would reap proceeds from a sale. Finally, he wrote that if the Debtors did not agree to a sale, he would file an action in state court to confirm his authority to sell the lake house without Debtors' approval.

Failing to obtain consent from the Debtors to sell, on September 28, 2012, the VonLehmans filed an action against the Debtors in the Brown County (Ohio) Court of Common Pleas. The VonLehmans sought a declaratory judgment that under O.R.C. § 1705.15(C)(2), an Ohio LLC membership statute, Debtors ceased to be members of GVL upon the filing of their bankruptcy petition. The VonLehmans also sued the Debtors for intentional interference with their efforts to list the property, alleging that in August 2012 the Debtors prevailed on the realtors the VonLehmans contacted to not sell the lake house for GVL. On November 27, 2012, the Debtors moved to refer the VonLehmans' suit to arbitration. In late 2012, the parties attempted mediation, but failed to settle the suit.

On February 25, 2013, Mr. VonLehman wrote to the Debtors to address the management of GVL and the sharing of costs during the pendency of the lawsuit. Mr. VonLehman proposed that going forward, the two families should pre-approve expenses at the lake house before paying for them, and only pay half of the expenses for which they gave approval. Further, he requested that the Debtors make efforts to cut back on lake house expenses. He also wrote that the two families would continue to take turns using the lake house every week.

On October 16, 2013, the state court action still pending, Mr. VonLehman wrote to the Debtors to advise them of a decrease in the monthly payments due on the assumed Fifth Third loan. He wrote that "I trust you will fund the exact amount of payment each month in a separate

5

deposit." [Bk. Doc. 67, Ex. 12 at 1.] This is the only evidence of the VonLehmans communicating with the Debtors regarding payment of the discharged loan assumption debt.

On December 11, 2013, the Brown County Court of Common Pleas entered a partial summary judgment in the VonLehmans' favor, granting their request for a declaratory judgment that the Debtors were no longer members of GVL. In defending the VonLehmans' action, Debtors had argued that O.R.C. § 1705.15(C)(2) was preempted by 11 U.S.C. § 541(c)(1)(B), which provides that property interests of a debtor in bankruptcy become property of the estate notwithstanding state laws which divest persons of property rights upon the filing of a bankruptcy petition. The state court rejected that argument, holding that under a Sixth Circuit case, *In re Bell*, 700 F.2d 1053 (6th Cir. 1983), § 541(c)(1)(B) ceased to operate once the Chapter 7 Trustee abandoned the Debtors' non-economic rights in GVL to the Debtors. The court did not grant summary judgment on the VonLehmans' intentional interference claim, which remains pending. On January 9, 2014, Debtors appealed the state court judgment, and on February 3, 2014, the Ohio Court of Appeals dismissed their appeal.

On December 13, 2013, two days after the entry of judgment in state court, Debtors filed the Contempt Motion against the VonLehmans, seeking sanctions, actual damages, and attorney's fees for the VonLehmans' alleged violations of the discharge injunction. On the same date, they filed the above-captioned adversary proceeding against the VonLehmans and GVL, seeking (i) a declaratory judgment that O.R.C. § 1705.15(C)(2) is preempted by § 541(c)(1)(B) and that Debtors therefore retain their voting rights in GVL, (ii) an order enjoining the VonLehmans from acting in derogation of Debtors' rights as members of GVL, and (iii) a judgment declaring that the VonLehmans waived their right to seek the relief they sought in state court by not taking action in Debtors' bankruptcy case. [AP Doc. 1.]

The VonLehmans objected to Debtors' Contempt Motion. [Bk. Doc. 50.] Debtors filed a response and the VonLehmans filed a sur-response. [Bk. Docs. 55 and 56.] The Court heard Debtors' Contempt Motion on February 11, 2014. At the hearing, the parties agreed the Court would benefit from a more developed record and submitted an agreed order setting a schedule for joint stipulations. [Bk. Doc. 59.] The parties filed extensive joint stipulations, summarized above, and on March 11, 2014, the Court again heard Debtors' Contempt Motion, following which it was submitted on the record.

The VonLehmans also moved to dismiss Debtors' adversary proceeding, arguing that Debtors' complaint should be dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, that Debtors lacked prudential standing, and that Debtors' claims failed on the merits due to claim preclusion. [AP Doc. 6.] Debtors filed a response [AP Doc. 12], and the Court heard the VonLehmans' motion to dismiss on March 11, 2014, following which it was also submitted on the record.

II. Analysis

A. Debtors' Contempt Motion.

Debtors offer two theories of contempt in this case, one direct and the other indirect. The first goes as follows. When Debtors filed their bankruptcy case, their voting rights in GVL became property of the estate, and § 541(c)(1)(B) prevented Ohio's LLC membership law from terminating those rights. After Debtors were discharged and their case was closed, the voting rights, which were not administered in the course of the case by the Chapter 7 Trustee, were abandoned to Debtors under § 554(c). At that point, Debtors contend, § 541(c)(1)(B) continued to operate, preempting Ohio's LLC membership law and preventing the termination of their rights. Thus, Debtors reason, their voting rights were abandoned to them as a consequence of

7

their discharge, and it therefore violates the discharge to file an action seeking to deprive Debtors of those rights.

The VonLehmans dispute the premise of Debtors' argument–that Debtors' voting rights in GVL are still retained by the Debtors. As they successfully argued in state court, they contend that under *Bell*, § 541(c)(1)(B) only shields property of the estate, not property abandoned to the Debtors, from ipso facto laws like Ohio's, and that it ceases to operate upon abandonment. Debtors respond that language to this effect in *Bell* is dictum. But the VonLehmans also argue that even were the Debtors' rights in GVL still good, the discharge does not shield property abandoned to a debtor at the close of his case from *in rem* actions brought to determine its status. Whether or not they were legally entitled to the relief they in fact received in state court, the VonLehmans contend, their filing of the state court action did not violate the discharge.

On this latter point, the VonLehmans are unquestionably right. Thus, the Court need not consider whether they or the Debtors correctly read *Bell* and § 541(c)(1)(B). The discharge discharges debts, and enjoins creditors from attempting to collect debts as personal liabilities of discharged debtors. *See* 11 U.S.C. § 524(a)(2). The discharge does not inoculate a debtor's property against *in rem* actions, even if that property were abandoned to a debtor upon his discharge. As this Court recently held, "it is only the personal liability of the debtor that is extinguished by the discharge; *in rem* actions remain intact." *In re Campbell*, No. 10-22561, 2014 WL 32161, at *5 (Bankr. E.D. Ky. Jan. 6, 2014).

The cases on which Debtors rely do not support their expansive understanding of the discharge; rather, they only support their arguments about § 541(c)(1)(B) and the effects of abandonment. Debtors heavily rely on *In re Daugherty Construction, Inc.*, 188 B.R. 607 (Bankr. D. Neb. 1995), which held that § 541(c)(1)(B) barred the enforcement of a state ipso facto law

during the pendency of a bankruptcy case, and that attempts to enforce such a law violated the automatic stay. But *Daugherty* did not concern the discharge. Debtors quote language from *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588 (10th Cir. 1990), to the effect that abandoned property "reverts to the debtor and stands as if no bankruptcy petition was filed." *Id.* at 590. But whether or not this language can be read to imply that § 541(c)(1)(B) or § 554 preempts ipso facto laws after abandonment, *Dewsnup* did not hold that attempts to divest debtors of abandoned property violate the discharge. *Dewsnup*, famously affirmed by the Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410 (1992), was a case about lien-strippng, not the discharge. Whatever the scope of § 541(c)(1)(B), *in rem* suits regarding the status of abandoned property do not implicate the discharge, and a contempt motion is not a proper means by which to seek an adjudication of that status.

The VonLehmans' action in filing the lawsuit did not attempt to collect a discharged debt; it sought an adjudication of Debtors' property rights in GVL, and damages for a post-discharge tort claim. On Debtors' novel theory of the discharge, any person, creditor or non-creditor, who wished to litigate the status of property abandoned to a debtor in a bankruptcy case would forever be barred, under pain of contempt sanctions, from bringing an *in rem* action. That theory is simply wrong.

Debtors' second theory of contempt in this case is that the VonLehmans filed the state court action for the purpose of coercing the Debtors to pay their discharged debt to the VonLehmans–namely, the assumed Fifth Third loan. Debtors theorize that once the VonLehmans obtained sole control of GVL, they intended to tell the Debtors they no longer would be welcome in the lake house unless they continued to pay their discharged obligations. Because the state court action was, Debtors claim, a stratagem to coerce repayment, it was an

9

indirect collection attempt that violated the discharge. The VonLehmans, unsurprisingly, deny that coercing repayment motivated the filing of the state court action.

Debtors' second theory of contempt implicates unsettled questions about the discharge. Courts broadly agree that a facially permissible action will violate the discharge if a creditor "'acted in such a way as to coerce or harass the debtor improperly'. . . so as to obtain payment of [a] discharged debt." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308 (10th Cir. 2008) (quoting *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006)) (internal quotation marks omitted). Courts, however, have differed on the relevance of creditors' motives to the indirect coercion theory.[2] Debtors contend that any act intended to induce repayment violates the discharge, regardless of whether it has any real coercive effect.

Even assuming Debtors' version of the indirect coercion theory is correct, the Court finds that the VonLehmans did not violate the discharge. The record overwhelmingly shows that the VonLehmans filed the state court action out of a desire to sell the lake house, after trying and failing for nine months to get the Debtors to agree to a sale. Even with the Debtors insisting on a sale at a price substantially below the lake house's market value, the VonLehmans were willing to sell to the Debtors' relatives at a discount. The VonLehmans resorted to court only after the Debtors failed to produce a family buyer and only after the VonLehmans repeatedly attempted to obtain the Debtors' consent to a sale outside their family.

Debtors rely on two pieces of evidence to maintain that the VonLehmans filed the state court action to coerce repayment. First, they rely on Mr. VonLehman's email of July 30, 2012, sent before the filing of the state court action, in which Mr. VonLehman wrote that both families

---

[2] *Compare Paul*, 534 F.3d at 1308 (endorsing an objective inquiry on whether a creditor's actions were effectively coercive); *In re Mahoney*, 368 B.R. 579 (Bankr. W.D. Tex. 2007) (same), *with In re Russell*, 378 B.R. 735 (Bankr. E.D.N.Y. 2007) (applying an inquiry into creditors' motives) *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991) (same),

could continue to use the lake house so long as they paid for their usage. Second, they rely on arguments in the VonLehmans' state court pleadings to the effect that allowing the Debtors to continue as members in GVL and veto a sale even after their obligation to finance GVL had been discharged would cause an unjust result.

     Mr. VonLehman's email shows that the VonLehmans wanted the Debtors to continue to pay for the expenses incurred by their post-petition use of the lake house, not the discharged Assumed Loan. It is not evidence that the VonLehmans brought the state court action for the purpose of coercing them to pay the latter. The Debtors' continued payment of the Assumed Loan seems to have never been in serious doubt. The evidence is that Debtors–both before and after the lawsuit–made voluntary payments on the Assumed Loan, presumably in an effort to keep the lake house from being sold. Mr. VonLehman's email of October 16, 2013, informing the Debtors of a decrease in the payments on the Assumed Loan and "trust[ing]" that Debtors would continue to make payments on the loan, is not to the contrary, but rather, reflects the VonLehmans' assumption that Debtors would continue to make voluntary payments. Moreover, the fact that all of the "demands" for payment on which Debtors rely were made before the VonLehmans won the state court action seriously belies the contention that the VonLehmans filed the state court action to place themselves in a better position to make coercive payment demands.

     As to the VonLehmans' discussion of Debtors' discharged debt in their state court pleadings, it only shows that the VonLehmans understood that debt was discharged and wanted to be able to satisfy *their* debt to Fifth Third with the lake house sale proceeds in the event that the Debtors stopped paying the Assumed Loan. In short, the VonLehmans' state court action may well have been motivated, in some sense, by Debtors' discharge, in that the Debtors'

11

discharge exposed the VonLehmans to primary responsibility for the Assumed Loan. This is a consequence of Debtors' discharge, not a violation of it.

The VonLehmans' state court action neither directly violated Debtors' discharge, nor was an indirect attempt to coerce Debtors to repay their discharged debt. The Court therefore denies Debtors' Contempt Motion.

### B. The Adversary Proceeding.

After the state court held that upon filing for bankruptcy Debtors lost their non-economic rights in GVL, Debtors filed an adversary proceeding in this Court requesting a declaratory judgment that Debtors still retained them. In so doing, Debtors effectively requested this Court to review and reverse a state court judgment. Under the *Rooker-Feldman* doctrine, this Court lacks that authority.

Debtors' adversary complaint seeks a declaratory judgment that Ohio's LLC membership law is preempted by § 541(c)(1)(B), that Debtors therefore retain their rights in GVL, that the VonLehmans waived their right to seek the relief they sought in state court by not seeking it in this Court, and injunctive relief against any acts by the VonLehmans inconsistent with Debtors' continuing membership rights in GVL–e.g., attempting to sell the lake house without the Debtors' permission.

The VonLehmans moved to dismiss on several grounds. First, they argued that the Court lacks subject-matter jurisdiction under *Rooker-Feldman* to hear what is essentially an appeal of a state court judgment. Second, they argued that Debtors lack prudential standing to make claims under § 541(c)(1)(B), because Debtors are outside the zone of interests that statute was enacted to protect and are asserting the rights of a third party, namely, the Chapter 7 Trustee. Third, they argued that Debtors' claims could be dismissed on the merits on the ground of res judicata.

The Court's analysis starts and stops with *Rooker-Feldman*. The *Rooker-Feldman* doctrine, which takes its name from two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), forbids lower federal courts from hearing cases that "essentially invite [them] to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). *Rooker-Feldman* ousts lower federal courts of subject-matter jurisdiction in "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced [4] and inviting district court review and rejection of those judgments." *Id.* at 284. The premise underlying *Rooker-Feldman* is that appellate jurisdiction over state court judgments has exclusively been granted by Congress to the Supreme Court; courts below that court cannot exercise its appellate jurisdiction. *See id.* at 291-92.

Debtors do not contest that all four parts of the *Exxon Mobil* test are met here. They argue, however, that their adversary proceeding falls within one of the few subject-matter exceptions to *Rooker-Feldman*. In *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367 (6th Cir. 2008), the Sixth Circuit held that bankruptcy courts have authority, notwithstanding *Rooker-Feldman*, to decide that a state court judgment modified a discharge. In *Hamilton*, a state court held a debtor personally liable for a discharged debt because he failed to plead the discharge as a defense. *Hamilton*, 540 F.3d at 370. When the debtor subsequently filed an action in bankruptcy court requesting an injunction against the creditor's attempts to collect the discharged debt in state court, the bankruptcy court held it lacked jurisdiction under *Rooker-Feldman*. The Sixth Circuit, however, reasoning that under 11 U.S.C. § 524(a)(1) judgments that modify the discharge are void *ab initio*, concluded that bankruptcy courts must have jurisdiction to decide

13

whether a state court judgment modified the discharge. However, the Sixth Circuit also held that once a bankruptcy court concludes a state-court judgment did not modify the discharge, "the *Rooker-Feldman* doctrine would bar federal court jurisdiction" to review and reject a state court judgment on any other ground. *Id.* at 376.

Debtors contend that the state court judgment modified their discharge, and that this Court therefore has jurisdiction to review it. The state court judgment modified their discharge, they argue, for the same reasons that they argue in their Contempt Motion the VonLehmans' filing of the state court action directly violated their discharge. To wit, by depriving the Debtors of property which they claim was abandoned to them upon discharge, the state court judgment altered the bundle of rights which Debtors obtained as a result of their discharge.

This argument fails for roughly the same reasons it failed when Debtors made it in their Contempt Motion. *Hamilton*'s discharge exception rests entirely on § 524(a)(1). Section 524(a)(1) "voids any judgment . . . to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged." That is to say, § 524(a)(1) voids judgments that hold debtors personally liable for discharged debts. It does not void judgments that deprive debtors of property abandoned to them upon their discharge. The judgment the VonLehmans obtained did not hold Debtors personally liable for a discharged debt, unlike the judgment at issue in *Hamilton*. It therefore does not fall within the discharge exception to *Rooker-Feldman*.

Debtors flatly request this Court to reverse a state court judgment, in contravention of *Rooker-Feldman*. Their argument that the state-court judgment falls within the discharge exception to *Rooker-Feldman* fails for the same reason their argument that the state-court action violated the discharge fails. *In rem* actions regarding the status of a debtor's prepetition property

do not violate the discharge, and decisions on those actions, right or wrong, cannot modify the discharge. Debtors' adversary proceeding will be dismissed for lack of subject-matter jurisdiction.

The Clerk is directed to file a copy of this Memorandum Opinion in the Debtors' main bankruptcy case and the above-captioned adversary proceeding.

15

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Monday, May 05, 2014
(tnw)